Julian Hertz, J.
Five separate charges have been tried on a consolidated basis accusing defendant with obstructing the sidewalk in violation of section 755(2)-7.0 of the Administrative Code of the City of New York. Trial was also had on a single charge of littering in violation of section 153.01 of the Health Code of the City of New York.
Testimony at the trial included that given by two New York City police officers who summoned the defendant on various occasions in the fall of 1971. Significantly, in her brief in support of acquittal defendant concedes what was amply demonstrated at trial; the placement of furniture on the sidewalk in front of the store and residential premises at 148 West 4th Street, New York City. Defendant qualifies her concessions, however, by her claim that the furniture was “ up against the front of the building and did not extend beyond the stoopline ”. These quoted words omit the undisputed fact that the area of admitted occupancy (as demonstrated by reference to her submitted sketch of the immediate and surrounding location) involved at least five feet four inches of the space measured perpendicularly from the front of the stained glass workshop which she and her family operate at the stated address for the manufacture of Tiffany shades and panels made of Tiffany glass.
Additional background to this matter is found in the fact that defendant and her family occupy an apartment above the store. *825 Although it is not in any way considered determinative of the result, it is noted that on cross-examination defendant admitted that the furniture placed on the sidewalk in front of the store, and which will be referred to in detail hereafter, sometimes encroached beyond an imaginary line drawn along the length of the sidewalk and which was referred to as the “ stoop ” line (and was, as afore-mentioned, five feet four inches from the storefront).
From the testimony it is clear that the furniture (at least some of which was regularly placed on the sidewalk) included a rug, stuffed chair, an old. barber chair, a sofa and/or a low car seat and three folding chairs. Defendant herself also indicated the occasional presence of a long low coffee table, a low moveable bookshelf extending about four feet from the storefront, as well as various games which were played alfresco by various persons, including the defendant, her family and invitees. She also referred to October 1, 1971, one of the dates here in question, at which time plants were placed on a U-shaped table top, and to a potted tree and ivy plants hanging from the store awning. She and other of her witnesses repeatedly asserted that none of these assorted items projected beyond the imaginary line of the stoops located elsewhere on the block and that the remaining unobstructed approximately eight-foot width of the sidewalk sufficed to permit two and perhaps four persons to walk abreast and pass the store on unobstructed sidewalk (although she admitted some might be compelled to step on the rug).
Despite the insistence of the defendant and her witnesses that the sidewalk was unobstructed in its outer limits (between the imaginary stoop line and the curb), the police officers who testified told a different story. Thus, Patrolman Skrapatis who issued four of the summonses in question on separate occasions (wholly without regard to the supposed significance or lack thereof of the stoop line) and according to his recollection, stated the conditions at the store on each occasion were quite static.
His version was that the furniture found on the sidewalk covered an area approximately 7 feet by 10 feet (the said 7-foot dimension extending from the storefront toward the curb). He testified that on each occasion on which a summons was issued by him defendant was present and there were people present seated on the sofa or on the easy chair. For example, on September 28, 1971, when he responded to the scene on a complaint, he saw four or five persons lounging about and on one *826 occasion he observed a man taking a shower with a hose connected to a water source within the store.
Then, too, there was testimony that defendant cooked food on a stove placed on the sidewalk. .Skrapatis testified to daily observation (during his five-day weekly duty schedule) for about a year in the course of his patrol duties. He specifically stated that passersby were sometimes forced to step off the curb to pass the store without encountering furnishings.
It is to be noted he stated that on two occasions he asked defendant (perhaps suggestively) if the garbage truck was expected to haul away the personalty which he, it appears, did not credit with substantial value.
Patrolman Reid issued one of the sidewalk obstruction summonses on October 1, 1971. He testified that the furniture intruded on three quarters of the sidewalk which he estimated was 12 feet wide (in contrast to defendant’s sketch based on alleged actual measure showing a width of 13 feet 10 inches). The witness stated, further, that the articles placed on the sidewalk extended over the entire sidewalk to the curb, and reached beyond the lateral limits of the store. He confirmed his presence on the other dates when Patrolman Skrapatis issued process and specifically placed the bookcase at the curb-line asserting, also, that other items of furniture intruded beyond the imaginary stoop line.
The charges in question are founded on alleged violations of section 755(2)-7.0 of the Administrative Code entitled ‘ ‘ Littering Prohibited ”. Defendant urges that her placement of furniture on the sidewalk in furtherance of the pursuit of casual living is not within the purview of that section. She insists on strict construction of the law and its inapplicability here, while conceding that she may not have an unlimited legal right to encroach on the sidewalk. Additionally, she contends that the described use of the area in front of her home is characteristic and a part of life in New York City.
This court finds as a fact the described condition of the sidewalk on the dates and hours specified in the summonses was, beyond a reasonable doubt, established to be violative of the statutory inhibition against obstructions. Further, this court is unimpressed with the contention that the defendant has the legal right to encumber the sidewalk either within or beyond the imaginary “ stoop ” line. Nor does the court perceive any basis in law or in the social fabric for the maintenance of such intrusions on what is plainly a part of the public domain.
■Subdivision 2 of section 755(2)-7.0 of the Administrative Code provides: “ 2. Every owner, lessee, tenant, occupant or *827 person in charge of any building or premises shall keep and cause to be kept the sidewalk, flagging and curbstone abutting said building or premises free from obstruction and nuisances of every kind, and shall keep said sidewalks, air shafts, area-ways, backyards, courts and alleys free from garbage, refuse, rubbish, litter and other offensive material.” It is, perhaps, significant that the section adverts to nuisances which are also inhibited thereby. There is, of course, substantial legal precedent for proceedings to compel the abatement of a nuisance, and defendant appears to concede, that an action for that relief might lie on the evidence educed herein. That recognition, real or fancied (if, indeed, the court presumes in that respect), is damaging to her. And the finding by this court that defendant has unlawfully intruded into the public domain, flowing from the evidence demonstrating that she has done so even within the area between the imaginary stoop line and. the store front, renders moot the purported question of whether she encroached beyond that line and on toward the curb. Further, it is the decision of this court that there is no legally permissible use of any portion of the sidewalk for residential purposes except as statutes may permit.
Indeed, in Graceland Corp. v. Consolidated Laundries Corp. (7 A D 2d 89, 90-91) an action to abate a nuisance, Justice Bbeitel stated: “ The obstruction of a public street or sidewalk beyond the reasonable uses permitted to abutting owners is a public nuisance. (Administrative Code, §§ 82d7-15.0, 755(2)-4.0. * * *) In the absence of special damage to another, such public nuisance is subject only to correction at the hands of public authority.” That language indicates the primary authority for keeping sidewalks unobstructed and free of obstructions and nuisances .resides with the municipality and was exercised in this instance.
The fact is that chapter 31 of the Administrative Code is collected with other sections under a Department of Sanitation heading while chapter 28-A, headed Department of Highways, also legislates respecting the use of streets and sidewalks. Defendant is thus led to refer to section 692Í-17.0 thereof which expressly permits the maintenance of showcases within the stoopline and within five feet of the wall of the building if the stoopline extends further. In similar vein, she refers to section 692h-10.0 permitting other items within three feet of a building. Reference is, fairly enough, made to the general prohibition against encumbering or obstructing a street as found in section 692h-1.0.
*828 While defendant cites the decision in People v. Friedman (16 N. Y. S. 2d 925), in connection with the right (created by statute) to place items within three feet of the front of a building, the decision of that Appellate Part of the Court of Special Sessions, in fact contains at least one pertinent observation. Thus, the court stated (p. 928): “ The public streets must be maintained for public purposes only, subject to the right of the legislative body to authorize certain uses which are not unreasonable and do not contravene the public interest.”
Defendant contends that the issue also turns upon the propriety of the prosecutions in these cases based on section 755(2)-7.0 when the conduct in question might have been challenged under section 692h-1.0 or under section 692h-10.0 of the Administrative Code. As to the last-mentioned section, the reported cases and the section itself, consider and appear to aim at goods, wares and merchandise offered for sale.
The foregoing notwithstanding, this court notes that subdivision 2 of section 755(2)-7.0 quite specifically requires the owner, lessee, tenant, occupant or person in charge of any building or premises to keep the sidewalk ‘ ‘ free from obstruction and nuisances of every kind ”. This court concludes the record supports the charge of obstruction irrespective of the fact (which this court holds is collateral) that the section is captioned ‘ ‘ Littering Prohibited ’ ’ and appears under the general heading Department of Sanitation. It should also be noted that the definitions of littering include more than refuse and rubbish scattered about. Webster refers to things lying about in disorder and untidiness. So, too, the drafters of the section in question (Administrative Code, § 755[2]-7.0) saw fit to include obstructions of the sidewalk under a littering caption. Whether that was a misuse of the word or not will not be pursued as it is not considered determinative. Suffice it to say that the legislative intent is plain and the proof in this case establishes beyond a reasonable doubt that the sidewalk in question was cluttered in a manner which formed the basis for charging obstruction within the accepted meaning of that term when applied to a sidewalk. The obvious fact that the sidewalk was at least partially but materially obstructed needs no further elaboration and such obstruction must, therefore, and to a prohibited extent, have impeded the normal and intended use thereof. The inclusion of that area of prohibition within the code section further clearly demonstrates that the title “Littering Prohibited” as that term is frequently used, is not fully descriptive of the statutory bounds.
*829 Finally, the charge of littering on October 1, 1971 in violation of section 153.01 of the Health Code based on proof that defendant dropped two matches used to light a cigarette on the sidewalk is dismissed since the court concludes the charge is based on acts too trifling to warrant judicial condemnation.
Defendant is found guilty and is fined $10 on each of the five remaining charges with a caution that repetition of her usurpation of public property may be expected to result in the imposition of substantially greater sanctions.